UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

LOUIS J. BRUNO,

                              Plaintiff,

     v.                                        No. 08-CV-867
                                                    (GLS/DRH)

CSX TRANSPORTATION, INC.,

                              Defendant.

---

**APPEARANCES:**                                **OF COUNSEL:**

HACKER & MURPHY, LLP             JAMES E. HACKER, ESQ.
Attorney for Plaintiff                   THOMAS D. BUCHANAN
7 Airport Park Boulevard
Post Office Box 104
Latham, New York 12110-0104

MOODY, STROPLE, KLOEPPEL,     PAUL G. MOODY, ESQ.
    & HIGGINBOTHAM, INC.
Attorney for Plaintiff
500 Crawford Street
Suite 300
Portsmouth, Virginia 23704

HODGSON RUSS LLP                 NOREEN DeWIRE GRIMMICK, ESQ.
677 Broadway                           LAWRENCE R. BAILEY, JR., ESQ.
Suite 301
Albany, New York 12207

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

    Plaintiff Louis Bruno ("Bruno") brings this action pursuant to the Federal Employers'

Liability Act, 45 U.S.C. § 51, et seq., alleging that the negligence of his employer, defendant

CSX Transportation, Inc. ("CSX"), caused his personal injuries.  Compl. (Docket No. 1).

Presently pending is CSX's motion to compel Bruno to produce an unlimited authorization

for release of his medical records from his primary care physician pursuant to Fed. R. Civ.

P. 37.  Docket No. 16.  Bruno opposes the motion.  Docket No. 17.  For the following reasons, CSX's motion is granted.

## I. Background

At all times relevant herein Bruno was employed by CSX as a carman.  Compl. ¶ 5.  On July 15, 2006, while inspecting a train, Bruno suffered a crush injury to his left foot.  Id. ¶ 6.  As a result of this injury, Bruno claims to have

> sustained serious and permanent injuries; . . . physical pain, discomfort, and mental anguish, . . . [which] will continue . . . in the future; . . . missed time and lost earnings and fringe benefits from his employment, [which] . . . he will continue to miss . . . [in the future]; . . . suffered loss of future earning capacity; . . . suffered and will continue to suffer loss of enjoyment of life . . ., permanent injury, permanent impairment, and permanent disability.

Id. ¶ 16.

During discovery, CSX sought Bruno's authorization to obtain copies of his medical records from Bruno's general family practitioner.  See Def. Mem. of Law (Docket No. 16) at 1.  In response, Bruno provided an authorization which limited the scope by excluding from disclosure any records pertaining to drug and alcohol treatment, mental health information, and HIV-related records.  Pl. Mem. of Law (Docket Nos. 17, 18)[1] at 3.  CSX made no objection to the authorization, and it was subsequently signed and sent to the provider's office.  Docket No. 18-5; see also Pl. Mem. of Law at 3.  The doctor advised that there would be an increased cost associated with providing the records with the limitation as the records regarding substance abuse treatment were so intertwined in Bruno's records that

---

[1] Docket Nos. 17 and 18 are duplicate filings of CSX's motion to compel.

either it would take longer to redact the records before production or the physician would have to re-dictate the records to omit the notes pertaining to the substance abuse treatment.  Docket No. 18-6 at 1.  The present motion ensued.

While the motion was pending, CSX filed a letter seeking to submit additional information pertaining to their need for unabridged medical records.  Docket No. 19.  CSX responded.  Docket No. 21.  According to CSX, records received from Bruno's medical insurance provider indicate that Bruno

> received treatment from the Hudson Mohawk Recovery Center, a facility that provides treatment for alcohol/substance abuse, sometime in 2008-2009. During the pendency of this Motion, . . . CSX claims [reported] that [Bruno] . . . has taken a[n undisclosed] leave of absence from railroad employment starting in November 2008 and has still not returned to work.

Id. at 1.  The records also indicate additional treatment from previously undisclosed sources during the fall of 2008.  Id. at 2.

## II.  Discussion

Bruno opposes unlimited disclosure of his medical records because the records are privileged and not relevant to the present case.  CSX argues that, especially in light of the recently disclosed records from Bruno's health insurer, the records are highly relevant to Bruno's contentions of mental anguish and lost earnings.    Parties are entitled to "discover[] . . . any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1).  "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Id.  This broad standard "encompass[es] any matter that bears on, or that reasonably could

3

lead to other matter[s] that could bear on, any issue that is or may be in the case." E.E.O.C. v. Nichols Gas & Oil, Inc., 256 F.R.D. 114, 118 (W.D.N.Y. 2009) (internal quotations and citations omitted). Thus, the present inquiry must determine (1) if Bruno's medical records are relevant; (2) if so, are the records protected by a federal, state, or common law privilege; and (3) if so protected, has the privilege been waived.

Here, the primary care physician's medical records relating to Bruno's substance abuse and mental health treatments bear directly on Bruno's claims. Bruno has alleged that he suffered, and continues to suffer, mental anguish, lost wages and work opportunities, and enjoyment of life and his prior activities. Compl. ¶ 16. CSX contends that other reasons existed for such damages. From Bruno's health insurer records, ample evidence exists that disclosure of the primary care physician's mental health and substance abuse treatment records will reveal evidence relevant to CSX's contention of alternative or intervening causes for the damages asserted by Bruno. At a minimum, the previously disclosed insurance records indicate that Bruno (1) temporarily left work to attend a facility where substance abuse rehabilitation treatment was given and (2) is on a leave of absence from work for undisclosed reasons which may be unrelated to the physical injuries allegedly sustained to his foot. Docket No. 21 at 1.

The question then becomes whether a family physician's records are privileged in an action based on a federal statute. The Supreme Court has specifically held that records such as those at issue here are protected by a psychotherapist-patient privilege but explicitly distinguished that treatment situation from "treatment by a medical, non-mental health provider." Nicholas Gas, 256 F.R.D. at 119 (citing Jaffee v. Redmond, 518 U.S. 1, 10 (1996)). The Second Circuit has used similar language in recognizing a

4

psychotherapist-patient privilege, distinct from the physician-patient privilege. Id. at 118-120 (citing In re Sims, 534 F.3d. 117, 128-42 (2d Cir. 2008)). Additionally, "a physician-patient privilege was not one of the nine privileges recognized in the earlier draft of [Fed. R. Evid.] 501 and has not traditionally been recognized at [federal] common law." Id. at 119; see also Ruszkowski v. Kaleida Health Sys., No. 06-CV-715S, 2007 WL 4380160, at *2 (W.D.N.Y. Dec. 13, 2007) ("[A]s this action is based solely on federal law, the court need not determine . . . that Plaintiff may assert any privilege other than the attorney-client privilege pursuant to Fed. R. Evid. 501."). Furthermore, although New York state "has legislated a physician-patient privilege, state privilege laws do not govern in federal question cases." Id. at 122 (citations omitted). Moreover, because jurisdiction in this case rests on a federal question, Bruno "cannot claim protection under the New York physician patient privilege." Id. (citations omitted).[2] Therefore, no privilege exists to protect this information from disclosure.[3]

---

[2] This does not diminish the fact that Bruno possesses a privacy interest in maintaining the confidentiality of his health records. Nicholas Gas, 256 F.R.D. at 122 (citations omitted). That interest finds its protection in Fed. R. Civ. P. 26(c) which authorizes the issuance of protective orders. Id. Given the difficulty and expense of redacting Bruno's records, their relevance to CSX's defenses, and the inapplicability of any privilege, providing CSX with the unabridged records will not offend the spirit of the Federal Rules. Id. It does not appear that any HIV-related records are at issue. To the extent that there are, they are not relevant to the issues in this action and shall be redacted.

[3] To the extent that Bruno asserts a cause of action or relies on the Health Insurance Portability and Accountability Act ("HIPAA"), it is without merit. HIPAA creates a monetary remedy for the wrongful disclosure of medical information. 42 U.S.C. § 1320d-6. However, HIPAA "does not confer a private cause of action to any particular class of individuals . . . [or] either explicitly or implicitly, confer to private individuals a right of enforcement." Barnes v. Glennon, No. 9:05-CV-0153 (LEK/RFT), 2006 WL 2811821, at *5 (N.D.N.Y. Sept. 28, 2006) (citations omitted). Furthermore, "HIPAA provides for no federal cause of action; instead, HIPAA provides for an enforcement mechanism for the

To the extent that a privilege does exist, it has been both affirmatively and implicitly waived. Affirmative waiver of a plaintiff's rights is found most commonly when a plaintiff signs a medical release consenting to the disclosure of his or her medical records. It is undisputed that Bruno voluntarily completed the waiver for his health insurer which authorized disclosure of extensive information about his mental health and substance abuse treatments. Additionally, Bruno implicitly waived any privilege he possessed because his mental health and substance abuse histories are significantly related to his claims of disability and damages. See generally Ruhlmann v. Ulster County Dep't of Soc. Servs., 194 F.R.D. 445, 450-51 (N.D.N.Y. 2000) (finding no waiver of psychotherapist-patient privilege where plaintiff is merely claiming "garden variety" mental anguish damages associated with physical injury, since plaintiff did not "put his or her emotional condition in issue [during the litigation] . . . .").

The Ruhlmann case is distinguishable as Bruno (1) is not seeking protection of mental records created by a psychotherapist and protected by federal privilege and (2) has claimed more than mere "garden variety" mental anguish, including loss of wages, employment, and enjoyment of life activities. Any recent absences from work and reduced capacity for work are directly related to Bruno's claims for damages. By signing the release, Bruno consented to disclosure of his records by his health insurer which further place his mental health and substance abuse history at issue in the present action.

This holding also serves the policy underlying the implicit waiver of privileges,

---

Secretary of Health and Human Services [HHS]." Id. at *6 (internal quotation marks and citations omitted). Therefore, Bruno could not sustain a HIPAA claim since there is no private cause of action granted by the statute. Bruno's only recourse under this statute is to request the State of New York or the Secretary of HHS to bring an action on his behalf.

precluding parties from "us[ing] the privilege as a sword, by placing mental condition at issue in the litigation, and concurrently as a shield, by seeking the protection of the privilege." Ruhlmann, 194 F.R.D. at 450 (citations omitted).  For the reasons previously discussed, Bruno placed his mental health at issue by asserting his particular claims for damages and by disclosing his insurance records.  He may not now obtain the protection of a privilege to prevent CSX from discovering how, and to what extent, this medical history has and will contribute to the damages Bruno allegedly suffered.

Accordingly, CSX's motion to compel production of Bruno's medical records from his primary care physician without redaction is granted.

### III.  Conclusion

For the reasons stated above, it is hereby **ORDERED** that CSX's motion to compel (Docket No. 16) be **GRANTED** and the records at issue herein shall be provided to CSX on or before **October 20, 2009**.


**IT IS SO ORDERED.**

dated:  October 5, 2009
         Albany, New York

David R. Homer
U.S. Magistrate Judge